UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 19-mj-3777-McAliley

UNITED STATES OF AMERICA

vs.

NOEMI SANCHEZ, and
JOSE ZAVALA-VILLALOBOS,

    Defendants.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)? ___Yes _x_ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? _Yes _x_ No

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By: _____
FREDERIC C. SHADLEY
Assistant United States Attorney
Court ID No. A5502298
99 Northeast 4th Street
Miami, FL. 33132-2111
Tel: (305) 961-9349
Fax: (305) 530-7976
Frederic.Shadley@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>Noemi Sanchez, and<br>Jose Zavala-Villalobos.<br><br>*Defendant(s)* | )<br>)<br>) Case No. 19-mj-3777-McAliley<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __November 1, 2019__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Possess with Intent to Distribute Heroin and Fentanyl |
| 21 U.S.C. § 841(a)(1) | Possession with intent to Distribute Heroin and Fentanyl |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Shad Aschleman, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __Nov. 1, 2019__

_____
*Judge's signature*

City and state: __Miami, FL__                Hon. Chris M. McAliley, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Shad Aschleman, being duly sworn, depose and state as follows:

1. I have been a Special Agent with the United States Department of Justice, Drug Enforcement Administration (DEA) since 2004, and am currently assigned to DEA Miami Field Division, High Intensity Drug Trafficking Area (HIDTA) Task Force, Group 41. I am a criminal investigator for the United States within the meaning of Title 21, United States Code, Section 878, and therefore I am empowered to conduct investigations of, and make arrests for, the offenses enumerated in Title 21 and Title 18.

2. The information set forth in this affidavit comes from my personal involvement in this investigation, as well as from information provided to me by other law enforcement officers, witnesses, and documents. This affidavit is submitted for the limited purpose of establishing probable cause for the issuance of a criminal complaint against Noemi SANCHEZ and Jose ZAVALA-VILLALOBOS for violations of the laws of the United States, that is: (1) conspiracy to possess with intent to distribute a mixture and substance containing a detectable amount of heroin and fentanyl, in violation of 21 U.S.C. § 846; and (2) possession with intent to distribute a mixture and substance containing a detectable amount of heroin and fentanyl, in violation of 21 U.S.C. § 841(a)(1).

3. Beginning in July 2019, a DEA Confidential Source (hereafter referred to as CS) began telephonic conversations with SANCHEZ, who works for a Drug Trafficking Organization (DTO) located in Southern California. That DTO is responsible for distributing kilogram quantities of heroin throughout the United States. During the week of October 14, 2019, the CS negotiated with SANCHEZ to have three kilograms of heroin delivered to him/her in the South Florida area. The CS and SANCHEZ negotiated for a price of $55,000 per the one kilogram of heroin, and $57,000 for two

1

kilograms of synthetic heroin. Based on my training and experience, I know that synthetic heroin is another term for fentanyl. After the price was agreed upon the CS was told by SANCHEZ that the drugs would arrive in Miami via tractor trailer the week of October 28, 2019.

4. On October 28, 2019, SANCHEZ contacted the CS and stated that the drugs had arrived and that she would be traveling to Miami on October 29, 2019, but ultimately changed the date to the 30th.

5. On October 30, 2019, the CS picked up SANCHEZ at the Miami International Airport at approximately 5:30 am. SANCHEZ had arrived on a flight from Los Angeles. The CS drove SANCHEZ to a hotel in Doral, Florida. SANCHEZ told the CS that she had someone meeting her and should have the drugs available for the deal later that day.

6. An associate of SANCHEZ'S, an individual with the initials ERN, arrived on the next flight from Los Angeles. ERN's role was to help SANCHEZ remove the three kilograms of cocaine from inside a vehicle engine that had arrived earlier and was located at a trucking distribution center in Doral, Florida. ERN rented a pickup truck at the airport, picked up SANCHEZ from the hotel, and left to obtain the heroin.

7. Later that same day, the CS received a call from SANCHEZ stating that she and ERN were being followed by police, and that they were not going to continue with the deal that day. The CS asked to meet with her at the hotel to discuss the situation.

8. That afternoon, the CS met with SANCHEZ and ERN in the hotel lobby. ERN immediately stated that he was done and left the area. ERN booked a flight for New York, returned the rental truck, and departed later that day. SANCHEZ agreed to continue the deal and requested that the CS help in retrieving the heroin from the engine. However, SANCHEZ didn't have the necessary

information to locate the engine. The CS declined to help, told SANCHEZ it was her responsibility, and further explained that he/she would be ready to conduct the deal when SANCHEZ had the product.

9. On the morning of October 31, 2019, SANCHEZ contacted the CS and stated she had another person to fly out to help her retrieve the heroin. SANCHEZ explained that she wanted to conduct the deal later that day. However, the CS stated he would meet with her on the morning of November 1, 2019, at her hotel, to finish the deal.

10. On the morning of October 31, 2019, the CS met with SANCHEZ and her associate, Jose ZAVALA-VILLALOBOS, inside the lobby of their hotel. Upon entering the lobby, the CS met with SANCHEZ while she was checking out of the hotel. The CS asked where the "girls" (code for heroin) were, and SANCHEZ replied they were coming with him (ZAVALA). Approximately 2 minutes later, ZAVALA arrived in the lobby with a suitcase and a blue and white shoulder bag containing the heroin and synthetic heroin (fentanyl). Before leaving the lobby, the CS asked to see the heroin, and also asked which package was the pure heroin, and which packages were the synthetic heroin (fentanyl). ZAVALA removed the shoulder bag and handed it to the CS. Then, SANCHEZ took the bag from the CS, opened the bag, and explained which package was which. The CS then stated that the money was with his partner in the parking lot. All three then exited the hotel and walked toward the undercover vehicle.

11. Upon arriving at the undercover vehicle, an agent acting in an undercover capacity (UC) exited the vehicle, took the bag containing the heroin from the CS, and placed it in the vehicle. Then the UC flashed a bag of money to SANCHEZ, which he later handed over to her. Soon after that, both SANCHEZ and ZAVALA were arrested.

12. The heroin was field tested by law enforcement, and the test returned positive for heroin. The synthetic heroin (fentanyl) was not field tested due to officer safety concerns. It will be sent to the DEA laboratory for testing.

13. SANCHEZ was read her *Miranda* rights in Spanish and English, and agreed to speak with the agents by signing a waiver of rights form. During SANCHEZ's questioning, she admitted that she was in Miami to sell heroin and synthetic heroin (fentanyl) to the CS.

14. ZAVALA was read his *Miranda* rights in Spanish, and agreed to speak with the agents by signing a waiver of rights form. He admitted that he had provided drugs to the CS earlier that day.

15. Based on the foregoing, your affiant respectfully submits that there is probable cause to believe that Noemi SANCHEZ and Jose ZAVALA-VILLALOBOS committed the following violations of the laws of the United States: (1) conspiracy to possess with intent to distribute a mixture and substance containing a detectable amount of heroin and fentanyl, in violation of 21 U.S.C. § 846; and (2) possession with intent to distribute a mixture and substance containing a detectable amount of heroin and fentanyl, in violation of 21 U.S.C. § 841(a)(1).

**FURTHER YOUR AFFIANT SAYETH NAUGHT**

Shad Aschleman, Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me this
_1st_ day of November, 2019

Hon. Chris M. McAliley
U.S. Magistrate Judge

4

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 19-mj-3777-McAliley

### BOND RECOMMENDATION

DEFENDANT: Noemi Sanchez

Pre-trial Detention

(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
    AUSA:   Frederic C. Shadley

Last Known Address: _____

What Facility: _____

Agent(s): S/A Shad Aschleman
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)
DEA

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 19-mj-3777- McAliley

### BOND RECOMMENDATION

DEFENDANT: Jose Zavala-Villalobos

Pre-trial Detention
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA:   Frederic C. Shadley

Last Known Address: _____

What Facility: _____

Agent(s):   S/A Shad Aschleman
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)
DEA